IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ONIE JANE PENA, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF GEORGE CORNELL, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:12-CV-0439-N |
| DALLAS COUNTY HOSPITAL DISTRICT, *et al.*, | § § § § | |
| Defendants. | § | |

## ORDER

This Order addresses Defendant the University of Texas Southwestern Medical Center's ("UTSW") motion to dismiss [12]. Because UTSW is immune from tort liability except as provided by the Texas Tort Claims Act ("TTCA"), TEX..CIV.PRAC.&REM.CODE § 101.001, *et seq.*, and Plaintiff Onie Jane Pena fails to plead sufficient facts demonstrating that UTSW is liable under TTCA, the Court grants UTSW's motion. Because Pena may well be able to cure the deficiencies the Court finds, the Court also grants Pena leave to amend.

### I. ORIGINS OF THE CASE

This case concerns the death of George Cornell – Pena's son.[1] Pl.'s Original Pet. ¶ 6 [1-1]. Shortly after midnight on February 10, 2011, Cornell left his home and ran to a nearby fire station in Oak Cliff. *Id.* ¶ 16. Cornell was suffering from psychiatric issues and

---

[1]The Court bases this section on the factual allegations in Pena's petition.

ORDER – PAGE 1

complaining of chest pain.  Firemen called the Dallas Police Department so they could transport Cornell to a hospital operated by Defendant Dallas County Hospital District d/b/a Parkland Health and Hospital System ("Parkland").  *Id.*  Cornell arrived at Parkland's emergency room shortly after two o'clock a.m. on February 10, 2011.  *Id.* ¶ 17.  Medical personnel[2] at Parkland did not screen Cornell for his chest pain upon his arrival, though (a) Cornell had been a patient at Parkland for cardiac conditions prior to February 10, 2011 and (b) his intake form from that night alerted medical personnel to a potential heart issue.[3]  During Cornell's time at Parkland, no one monitored or treated him for his heart condition.  *Id.* ¶ 17.

Some time after arriving at Parkland, Cornell became agitated, refused medical treatment, and asked to leave the emergency room.  *Id.* ¶ 18.  Medical personnel took Cornell to a seclusion room and gave him certain drugs to chemically restrain him – including Haldol, Ativan, and Benadryl.  Medical personnel – believed to be three psychiatric technicians – then forcefully restrained Cornell and held him down in the "prone position," pressing his face against the floor.  Finally, medical personnel gave Cornell a second dose of Haldol, Ativan, and Benadryl.  After Cornell "succumbed" to the medication, medical personnel left him alone in the seclusion room.  *Id.*

---

[2]Pena does not identify any individuals involved in Cornell's care at Parkland in her petition, only referencing "John/Jane Does 1-30."  The Court, therefore, refers to these unknown persons as "medical personnel."

[3]Cornell's intake form referenced "hyperlipidemia [high cholesterol], obesity and lipid disorder . . . cardiovascular positive for palpitations."  Pl.'s Original Pet. ¶ 17 (omission in original).

After some time had passed, someone found Cornell unresponsive in the seclusion room, *id.* ¶ 20, and the attending physician and a nurse reported that he had no pulse. *Id.* According to the medical examiner, Cornell died of "cardiac complications during 'an acute psychosis from schizophrenia.'" *Id.*

Pena – on her own behalf and as representative of Cornell's estate – subsequently brought suit in Texas state court against Parkland, UTSW, and John and Jane Does 1-30 – UTSW physicians and administrators, Parkland physicians and administrators, and Parkland "employees, nurses, psychiatric techs, and other staff . . . involved in [Cornell's] restraint and monitoring." *Id.* ¶ 7-11. Pertinent to the present motion, Pena alleges that UTSW was negligent in: (1) "failing to properly evaluate, consider, and treat George Cornell;" (2) "failing to take an adequate past medical history; specifically failing to note and follow-up on any heart conditions from which [Cornell] was suffering;" (3) "inappropriately chemically restraining George Cornell with Haldol, Ativan, and Benadryl IM;" (4) failing to ensure that a qualified physician was present and involved in treatment decisions for George Cornell;" (5) "misus[ing] . . . prescription drugs and needles in negligently chemically restraining [Cornell] without his consent and without treating his medical condition;" (6) "maintaining in a defective condition or misusing a seclusion room that was not properly monitored to ensure that [Cornell] was not suffering from an urgent medical condition that allowed his medical condition to go untreated until he died;" (7) "failing to properly supervise residents as required by law and its contract with Parkland;" and (8) "negligently maintaining a two-tiered health care system that unnecessarily jeopardizes the lives and well-being of patients

like George Cornell." *Id.* ¶ 42.  Parkland removed the case to this Court on February 10, 2012 because Pena's Petition contained a federal cause of action under 28 U.S.C. § 1983. Def. Parkland's Notice Removal 1-2 [1-1].  UTSW consented to Parkland's removal. *Id.* 2-3.

UTSW now moves to dismiss Pena's claims against it.  UTSW first contends that it is immune from tort liability except as provided by TTCA and that Pena's claims do not sufficiently allege that UTSW is liable under TTCA's use or condition of tangible or real personal property provision.  Def. UTSW's Mot. Dismiss 1-2.  UTSW further argues that Pena's claims against it fail because she does not identify individual UTSW personnel who allegedly used the tangible personal property.[4]  *Id.* at 2.

## II. THE COURT HAS SUBJECT MATTER JURISDICTION OVER PENA'S CLAIMS AGAINST UTSW

At the outset, the Court notes that it has subject matter jurisdiction over the claims between Pena and UTSW.  States – and, by extension, state entities acting as "arms of the state," like UTSW[5] – enjoy sovereign immunity from suit under the Eleventh Amendment

---

[4]UTSW also argues that TTCA bars Pena's request for exemplary damages, Def. UTSW's Mot. Dismiss 2, though the Court need not address this argument because it dismisses Pena's claims against UTSW.

[5]It is well-settled that certain state entities, as "arms of the state," fall within the Eleventh Amendment's protection from suit. *See Regents of Univ. of Cal. v. Doe*, 519 U.S. 425 (1997); *Zentgraf v. Texas A&M Univ.*, 492 F. Supp. 265, 271-72 (S.D. Tex. 1980).  The parties do not dispute that UTSW is a state entity or "subdivision" of the State of Texas, and the Court finds that UTSW is an "arm of the state." *See, e.g.*, *Zentgraf*, 492 F. Supp. at 271-72 (holding that Texas A&M University is an "alter ego" of the state of Texas entitled to Eleventh Amendment immunity); *Stotter v. Univ. of Texas at San Antonio*, 508 F.3d 812, 821 (5th Cir. 1998) ("This court has also recognized that state universities as arms of the state are not 'persons' under § 1983."); *Kassen v. Hatley*, 887 S.W.2d 4, 13 (Tex. 1994) ("Parkland and [UTSW] are governmental entities entitled to the defense of sovereign immunity.");

of the United States Constitution. In the Fifth Circuit, Eleventh Amendment immunity questions fall within a court's subject matter jurisdiction inquiry. *United States ex rel. Foulds v. Texas Tech Univ.*, 171 F.3d 279, 285 (5th Cir. 1999).[6] Generally, a federal court lacks authority to adjudicate a suit against a state by a citizen of that state, *Hans v. Louisiana*, 134 U.S. 1 (1890), or by a citizen of a foreign state or country, U.S. CONST. amend. XI. However, a state or state entity waives sovereign immunity when it voluntarily removes a case to federal court for judicial determination, and the federal court may adjudicate the removed suit. *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 256 (5th Cir. 2005) (interpreting *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613 (2002)). Here, UTSW waived its immunity from suit by consenting to Parkland's removal from state to federal court, *see Kelley v. Papanos*, 2012 WL 208446, at *2-3 (S.D. Tex. 2012) (explaining that defendant who consents to codefendant's removal waives Eleventh Amendment immunity from suit under TTCA); Defs.' Notice Removal 2-3, and the Court may therefore adjudicate the case.[7]

---

*Arnold v. Univ. of Texas Sw. Med. Ctr. at Dall.*, 279 S.W.3d 464 (Tex. App. – Dall. 2009, no pet.).

[6]Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)).

[7]It is well settled in this Circuit that TTCA does not waive UTSW's immunity from suit in federal court; it waives immunity from suit – in limited circumstances – only in Texas state courts. *Sherwinski v. Peterson*, 98 F.3d 849, 851-52 (5th Cir.1996); *see also e.g.*, *Ripley v. Univ. of Texas Health Sci. Ctr.*, 400 F. Supp. 2d 933, 938 (W.D. Tex. 2005). However, because UTSW waived immunity from suit by *removing* the case, the Court considers the

### III. RULE 12(B)(6) MOTION TO DISMISS STANDARD

To decide a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). According to the Supreme Court, a viable complaint must include "enough facts to state a claim to relief that is plausible on its face" – i.e., "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009). A plaintiff is required to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted). In sum, to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations. *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003); *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989).

In ruling on a Rule 12(b)(6) motion, courts generally limit their review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most

---

merits of Pena's claims against UTSW under Rule 12(b)(6) in Parts III & IV, below, to ascertain whether it has also waived liability under TTCA. *See Kelley*, 2012 WL 208446, at *3-4 (explaining that a state's voluntarily removal to federal court waives its immunity from suit but not its immunity from liability, and that state entity may therefore assert its state sovereign immunity under TTCA as a defense against plaintiff's claim in federal court on Rule 12(b)(6) motion to dismiss).

favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). A court may also consider documents attached to a motion to dismiss that are referred to in the plaintiff's compliant and are central to the plaintiff's claim. *Scanlan v. Texas A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).

### IV. PENA FAILS TO STATE A CLAIM AGAINST UTSW

"Because [UTSW] is a governmental entity, the doctrine of governmental immunity shields it from liability for the negligence of its employees absent a waiver of that immunity." *Texas A&M Univ. v. Bishop*, 156 S.W.3d 580, 583 (Tex. 2005) (citing *Univ. of Texas Med. Branch at Galveston v. York*, 871 S.W.2d 175, 177 (Tex. 1994)). TTCA "did not abolish" this immunity, *York*, 871 S.W.2d at 177, but it "provides a limited waiver [of immunity] when personal injury or death is caused by a 'use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law,'" *Bishop*, 156 S.W.3d at 583 (quoting TEX. CIV. PRAC. & REM. CODE § 101.021(2)).

When a plaintiff's claims involve the use of property under TTCA, the governmental entity itself must be the user. *San Antonio State Hosp. v. Cowan*, 128 S.W.3d 244, 246 (Tex. 2004); *see also, e.g.*, *Texas Tech. Univ. Health Sci. Ctr. v. Bufurd*, 334 S.W.3d 334, 338-39 (Tex. App. – Eastland 2010, no pet.); *City of Pasadena v. Thomas*, 263 S.W.3d 43, 45 (Tex. App. – Hous. [1st Dist.] 2006, no pet.); *Gonzales v. City of El Paso*, 978 S.W.2d 619, 623

(Tex. App. – El Paso 1998, no pet.).[8]  "However, mere involvement of . . . property in an injury will not, in and of itself, waive liability." *Texas Tech Univ. Health Sci. Ctr. v. Jackson*, 354 S.W.3d 879, 884 (Tex. App. – El Paso 2011, no pet.) (citing *Dallas Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 342-43 (Tex. 1998)). The government's use of the property must have proximately caused the plaintiff's harm. *E.g., Miller*, 51 S.W.3d at 588; *Bossley*, 968 S.W.2d at 343; *Jackson*, 354 S.W.3d at 884. "To establish causation, the use of property must do more than just furnish the condition which makes the injury possible;" the property must be "the instrumentality of the harm." *Jackson*, 354 S.W.3d at 884 (citing *Bossley*, 968 S.W.2d at 343 and *Batson v. City of Port Isabel*, 49 S.W.3d 425, 429 n.4 (Tex. App. – Corpus Christi 2001, pet. denied)). Similarly, with regard to a claim based on defective real property, "the premises condition must actually be the instrumentality that causes the plaintiff's harm." *Hendrix v. Bexar Cnty. Hosp. Dist.*, 31 S.W.3d 661, 663 (Tex. App. – San Antonio 2000, pet. denied) (citing *San Antonio State Hosp. v. Koehler*, 981 S.W.2d 32, 37 (Tex. App. – San Antonio 1998, pet. denied) and *Wimberly v. Sloan*, 963 S.W.2d 556, 558 (Tex. App. – Eastland 1998, no pet.)).

Pena pleads that UTSW (1) "misuse[d] . . . prescription drugs and needles" on Cornell and (2) "maintain[ed] in a defective condition or misus[ed] a seclusion room that was not properly monitored," allowing Cornell's "medical condition to go untreated until he died."

---

[8]"'Use' means 'to put or bring into action or service; to employ for or apply to a given purpose.'" *Texas Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 588 (Tex. 2001) (quoting *Texas Natural Res. & Conservation Comm'n v. White*, 46 S.W.3d 864, 869 (Tex. 2001)).

Pl.'s Original Pet. ¶ 42.  Thus, Pena claims that UTSW misused personal property under TTCA – the medication and needles; that UTSW misused real property under TTCA – the seclusion room; and that UTSW kept the seclusion room in a defective condition.[9]  The Court first considers Pena's allegations about UTSW's alleged misuse of the medication and needles and then turns to Pena's allegations about the seclusion room.

Medication and needles qualify as tangible personal property in Texas.  *See Miller*, 51 S.W.3d at 588 (medications); *Buford*, 334 S.W.3d at 338 (same); *Dallas Cnty. v. Alejo*, 243 S.W.3d 21, 27-28 (Tex. App. – Dallas 2007, no pet.) (same); *Kamel*, 333 S.W.3d at 685-86 (surgical instruments, including scalpel and scissors).  However, through artful use of the

---

[9]None of Pena's other negligence allegations against UTSW fall under TTCA's limited waiver provisions – specifically, that UTSW was negligent in (1) "failing to properly evaluate, consider, and treat George Cornell;" (2) "failing to take an adequate past medical history; specifically failing to note and follow-up on any heart conditions from which [Cornell] was suffering;" (3) "inappropriately chemically restraining George Cornell with Haldol, Ativan, and Benadryl IM;" (4) failing to ensure that a qualified physician was present and involved in treatment decisions for George Cornell;" (5) "failing to properly supervise residents as required by law and its contract with Parkland;" and (6) "negligently maintaining a two-tiered health care system that unnecessarily jeopardizes the lives and well-being of patients like George Cornell."  Pl.'s Original Pet. ¶ 42; *see* TEX. CIV. PRAC. & REM. CODE § 101.021("A governmental unit in the state is liable for: (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if: (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and (B) the employee would be personally liable to the claimant according to Texas law; and (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.").  Accordingly the Court dismisses Pena's claims that UTSW was negligent on grounds other than those that Pena alleges stem from UTSW's use of personal or real property or the condition of UTSW's real property.

ORDER – PAGE 9

passive voice, Pena's claims regarding this property fail because she has not sufficiently alleged that UTSW "used" the property under TTCA.

Pena asserts claims against unidentifiable John and Jane Does 1-10, which include an unidentified UTSW "resident[ and] attending and/or supervising physicians responsible for the medical treatment of George Cornell." *See* Pl.'s Original Pet. ¶ 9. However, Pena does not allege that these UTSW employees administered the Haldol, Ativan, and Benadryl to Cornell. *See* Pl.'s Original Pet. ¶ 18 ("[Cornell] was medicated with powerful drugs;" "[Cornell] was remedicated with Haldol, Ativan and Benadryl").

In *Burford* – a case similar to this one – the Eastland Court of Appeals found that Texas Tech University Health Science Center did not "use" medicine patches within the meaning of TTCA's waiver provision. 334 S.W.3d at 338. In that case, Texas Tech's personnel worked in an outside hospital and prescribed the patches to the plaintiff, but the outside hospital's personnel administered the patches. The court held that "[Texas] Tech did not employ those persons who actually dispensed and administered the patches; those persons worked for Ector County Hospital District, and [Texas] Tech is not responsible for their actions," and it distinguished a case where "the pleadings unambiguously state[d] the use of the property by Dr. [Smith], a government employee, caused the injury." *Id.*

Here, because the pleading does not affirmatively allege that identifiable UTSW personnel administered the medication to Cornell, Pena has failed to sufficiently tie "use" of the medication to UTSW or its employees. The Court takes note of the fact that Pena alleges that "UTSW and its faculty physicians negligently . . . misuse[d] prescription drugs and

needles." Pl.'s Pet. ¶ 42. However, in Pena's factual recitation, she employs the passive voice in a way that makes it impossible for the Court to determine whether UTSW personnel – or non-UTSW personnel – administered the medications to Cornell. She states that "[Cornell] was placed in seclusion at 02:30 AM and was medicated with powerful drugs. . . . [Cornell] was [then] remedicated . . . ." *See* Pl.'s Pet. ¶ 18.[10] But these assertions are insufficient to provide UTSW with adequate notice of which employees' conduct may have subjected it to a negligence claim and to tie "use" of the medication and needles to UTSW.[11] *Compare Pozarlik v. Camelback Assocs., Inc.*, 2011 WL 6003841, at *3 (M.D. Pa. 2011) (noting that plaintiff may allege claim against Doe defendants who were agents and workmen of defendant entity without identifying agents where it was clear which entity employed Does) *with Farmer v. Dir. of Az. Adult Prob. Dep't*, 2010 WL 481423, at *5 (D. Ariz. 2010)

---

[10]The Court notes that it is permissible in some circumstances for Pena to name "Doe" defendants in her initial pleading and later replace them with named defendants after some discovery. *See, e.g.*, *Hittle v. City of Garland*, 1 F.3d 1236 (5th Cir. 1996) (unpub.) (reversing district court's dismissal of John Doe defendants on ground that plaintiff was not given reasonable time to conduct discovery regarding Does' identities before district court dismissed them from suit); *Dean v. Barber*, 951 F.2d 1210, 1215-16 (11th Cir. 1992); *Simmons v. D.C.*, 750 F. Supp. 2d 43, 45 (D.D.C. 2011) ("An action may proceed against a party whose name is unknown if the complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery." (quoting *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995))); *Murphy v. Goord*, 445 F. Supp. 2d 261, 266 (W.D.N.Y. 2006). It is not clear that Pena makes allegations specific enough regarding the Does to permit their liability to be ascertained after reasonable discovery. Because the Court is granting Pena leave to amend, it need not resolve the question.

[11]The Court notes that Pena's strategy is somewhat akin to "group pleading" in Private Securities Litigation Reform Act (PSLRA) cases, which the Fifth Circuit does not permit. *E.g.*, *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 284-85 (5th Cir. 2006).

ORDER – PAGE 11

(dismissing allegations that John and Jane Does 2-10 denied plaintiff his right to timely and adequate medical care by denying him his medications because plaintiff's allegations were directed at a group of Defendants, and he "failed to link any of his injuries to any specific conduct by any specific Defendant") *and Alami v. W. Heritage Ins. Co.*, 2008 WL 45528, at \*2 (E.D. La. 2008) (dismissing plaintiff's failure to procure insurance based on failure to supervise in part because plaintiff failed to identify insurance agent with whom he spoke and defendant therefore "d[id] not have adequate notice of whom it allegedly failed to supervise").[12]

Pena's claims against UTSW regarding the seclusion room similarly fail. Pena fails to allege facts demonstrating that UTSW used the room or kept it in a defective condition. First, the room is located in Parkland. And, as the Court discusses above with regard to the medications, Pena fails to sufficiently tie any "use" of the room to UTSW or its employees. Again, she pleads claims against only unidentified Jane and John Does 1-10, and she does not sufficiently allege that any specific UTSW personnel " misus[ed] a seclusion room that was not properly monitored."[13] Pl.'s Original Pet. ¶¶ 9, 42.

---

[12] Because the Court finds that Pena fails to sufficiently tie UTSW to the use of medications and needles, it need not address whether the medication and needles caused Cornell's death under TTCA. *See Miller*, 51 S.W.3d at 588.

[13] Even if the Court were to find that Pena sufficiently alleged UTSW used the room, the crux of Pena's complaint with the seclusion room is that UTSW medical personnel failed to monitor Cornell while he was in the room. *See* Pl.'s Original Pet. ¶ 42. The Amarillo Court of Appeals has made clear that a government hospital's failure to monitor real property does not state a cause of action under TTCA. *Fryman v. Wilbarger Gen. Hosp.*, 207 S.W.3d 440, 441-42 (Tex. App. – Amarillo 2006, no pet.) (denying plaintiff's assertion of waiver where patient was assaulted in hospital and alleged that hospital failed to monitor security

Pena also fails to establish UTSW's liability under TTCA for a premises defect. "With respect to ordinary premises defects . . . [TTCA] specifically limits the duty owed to a claimant to 'the duty that a private person owes to a licensee on private property.'" *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 554 (Tex. 2002) (quoting TEX. CIV. PRAC. & REM. CODE § 101.022(a)). However, "[a] licensee asserting a premises-defect claim generally must show, first, that the defendant possessed – that is owned, occupied, or controlled – the premises where the injury occurred." *Id.*[14] Here, Pena alleges that Cornell was physically in *Parkland's* seclusion room and that UTSW personnel may have provided medical services to him there. *See* Pl.'s Original Pet. ¶¶ 2, 9 (stating that "Parkland is a county hospital that has a service agreement with UTSW in which UTSW faculty and students . . . provide services at Parkland," and alleging that John and Jane Does 1-10 were "resident[s and] attending and/or supervising physicians responsible for the medical treatment of George Cornell"). She fails, however, to allege that UTSW owned, occupied, or controlled the

---

cameras).

[14]To establish liability against a government entity in a premises-liability case, the plaintiff must demonstrate that:
> (1) a condition of the premises created an unreasonable risk of harm to the licensee; (2) the owner actually knew of the condition; (3) the licensee did not actually know of the condition; (4) the owner failed to exercise ordinary care to protect the licensee from danger either by not adequately warning the licensee of the condition or by not making the condition reasonably safe; and (5) the owner's failure was a proximate cause of injury to the licensee.

*Brown v. Harris Cnty., Texas*, 2010 WL 774138, at *13 (S.D. Tex. 2010) (citing *Cnty. of Cameron v. Brown*, 80 S.W.3d at 554).

seclusion room in any way. Accordingly, Pena fails to state a claim for premises defect against UTSW.[15]

## CONCLUSION

Because Pena has not plead sufficient facts to demonstrate that UTSW is liable under TTCA, Pena fails to state a claim for negligence against UTSW. Accordingly, the Court dismisses Pena's negligence claim against UTSW.

However, the Court grants Pena leave to amend her complaint to address the deficiencies that it has identified in this Order. *See, e.g.*, *Morgan Stanley Dean Witter & Co.*, 313 F.3d at 329 (noting that Fifth Circuit precedent supports the premise that "granting leave to amend is especially appropriate" where district court dismisses plaintiff's complaint for failure to state a claim and explaining that, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal"). Accordingly, Pena may file an amended complaint – amending only her claims against UTSW – within fourteen (14) days of the date of this Order. In her amended complaint, Pena must identify the UTSW Doe Defendants.

---

[15]Pena has also failed to identify any defect in the seclusion room. A "defect" is "a shortcoming, an imperfection, or the 'want of something necessary for completeness.'" *Univ. of Texas at El Paso v. Moreno*, 172 S.W.3d 281, 285 (Tex. App. – El Paso 2005, no pet.) (quoting *Laman v. Big Spring State Hosp.*, 970 S.W.2d 670, 671-72 (Tex. App. – Eastland 1998, pet. denied)).

Signed September 4, 2012.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 15