IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ONIE JANE PENA, Individually and as §
Representative of the Estate of George §
Cornell, §
　　　　　　　　　　　　　　　　§
　　　　　Plaintiff, §
　　　　　　　　　　　　　　　　§
v. §　　　　Civil Action No. 3:12-CV-439-N
　　　　　　　　　　　　　　　　§
DALLAS COUNTY HOSPITAL §
DISTRICT d/b/a PARKLAND HEALTH §
AND HOSPITAL SYSTEM, *et al.*, §
　　　　　　　　　　　　　　　　§
　　　　　Defendant. §

## ORDER

This Order addresses eight motions currently pending in this case.[1]  For the reasons set out below, Plaintiff Onie Jane Pena's amended complaint sufficiently states claims under 42 U.S.C. § 1983 for (1) violation of Plaintiff George Cornell's right to medical care, (2) use of excessive force, and (3) failure to supervise and train.  Pena has also stated negligence claims.  Accordingly, the Court:

　　　1.　　　Denies Defendant The University of Texas Southwestern Medical Center's

　　　　　　　("UTSW") motion to dismiss [42];

---

[1]There are two other pending motions: (1) Shannon and Anderson's motion for a reply under Federal Rule of Civil Procedure 7(a) and to stay discovery [55], and (2) Schierding and Nurse Brown's motion for a Rule 7(a) reply [61].  These motions relate to the moving defendants' assertions of qualified immunity.  As explained below, however, defendants who wish to assert qualified immunity must do so in answers, and no Defendant has yet filed an answer in this case.  The Court therefore denies these motions, without prejudice to refiling at a proper time, as unripe.

2.      Grants in part and denies in part Defendants Shawn Chambers, M.D.; Ann M. Molinaro; and Sherwin de Guzman's motion to dismiss or, alternatively, motion for a more definite statement [50];[2]

3.      Grants in part and denies in part Defendants Ronald Givens and Alexander Achebe's motion to dismiss [52];

4.      Grants in part and denies in part Defendant Johnny Roberts's motion to dismiss [54];

5.      Grants in part and denies in part Defendants John Jay Shannon, M.D. and Ronnie Joe Anderson, M.D.'s motion to dismiss and motion for judgment on the pleadings [56];

6.      Grants in part and denies in part Defendant Dallas County Hospital District d/b/a Parkland Health and Hospital System's ("Parkland") motion to dismiss and motion to dismiss certain claims against Anderson and Shannon [57];

7.      Grants in part and denies in part Defendants Nancy Schierding and Vernell Brown's ("Nurse Brown") motion to dismiss [62]; and

---

[2]The Court may grant Chambers, Molinaro, and Guzman's motion for a more definite statement only if the amended complaint is "so vague or ambiguous that the [moving parties] cannot reasonably prepare a response." FED. R. CIV. P. 12(e). These motions are generally disfavored. *See* 5A CHARLES ALAN WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1377 (2d ed. 1990) (citing cases). The Court concludes that the amended complaint is sufficiently clear as to Pena's claims against Chambers, Molinaro, and Guzman to allow these Defendants to prepare a response. The Court accordingly denies this motion.

8. Grants in part and denies in part Defendants Kevin T. Brown, M.D. ("Dr. Brown"); John Quinn, M.D.; and John Gregory Fitz, M.D.'s motion to dismiss [65].

## I. THE DEATH OF GEORGE CORNELL AND THE POSTURE OF THIS ACTION

### A. Cornell's Death at Parkland Hospital[3]

This case arises out of the tragic death of Pena's son, George Cornell. In the early morning hours of February 10, 2011, Cornell left his Dallas home and ran to a nearby fire station, complaining of chest pain. Cornell also suffered from psychiatric issues. At the request of officials at the fire station, Dallas Police officers came to the station and took Cornell to a hospital operated by Parkland ("Parkland Hospital").

Cornell arrived at the hospital's psychiatric emergency room shortly after 2:00 a.m. Medical personnel at Parkland Hospital did not screen Cornell for his chest pain, even though, based on Cornell's intake form,[4] at least Chambers and Guzman, who directly treated Cornell, knew that he had a heart issue. Moreover, Cornell had previously been treated at Parkland Hospital for cardiac problem. During Cornell's time at Parkland on February 10, however, no one monitored or treated him for his heart condition.

---

[3]The Court takes the facts in this section from Pena's amended complaint [34], and the Court notes that they are, at this stage of the litigation, allegations only.

[4]Cornell's intake form referenced "hyperlipidemia [high cholesterol], obesity and lipid disorder . . . cardiovascular positive for palpitations." Am. Compl. ¶ 27 (ellipsis in amended complaint).

Shortly after arriving at the hospital, Cornell became agitated. In response, Chambers administered or caused to be administered certain drugs, including Haldol, Ativan, and Benadryl. Either Chambers or Guzman placed Cornell in an unmonitored seclusion room. Molinaro failed to monitor that room. Dr. Brown, with his staff's assistance,[5] at some point administered more drugs that, in combination with the drugs Chambers administered, contributed to Cornell's death.

On two occasions, psychiatric technicians Roberts, Achebe, and Givens forcefully restrained Cornell and held him in a prone position, pressing his face against the floor of the seclusion room. The second occasion lasted for over fifteen minutes. After Cornell ceased to struggle, the Parkland Hospital personnel left him alone, unattended and unsupervised, in the locked seclusion room.

After some time had passed, medical personnel found Cornell unresponsive in the seclusion room. The attending physician and a nurse reported that he had no pulse. According to the medical examiner, Cornell died of cardiac complications during "an acute psychosis from schizophrenia." Am. Comp. ¶ 31. Pena asserts that three factors combined to kill Cornell: his heart condition, the medication he received, and the force to which he was subjected in the seclusion room.

---

[5]Pena does not identify the staff members in question.

### B.  Pena's Lawsuit and the Pending Motions

Pena filed this suit in Texas state court on her own behalf and as the representative of Cornell's estate.  In her amended complaint, the current live pleading, she asserts claims against fifteen defendants:

1.  Parkland;

2.  UTSW, a medical school that has a service agreement with Parkland under which UTSW faculty and students provide services at Parkland Hospital;

3.  Achebe, the first of the three psychiatric technicians who allegedly held Cornell on the ground in the seclusion room;

4.  Anderson, then Parkland's CEO;

5.  Dr. Brown, Cornell's attending physician;

6.  Nurse Brown, Parkland's psychiatric emergency department unit manager;

7.  Chambers, a Parkland resident and the admitting physician at the emergency room the night Cornell died;

8.  Fitz, the dean of UTSW;

9.  Givens, the second psychiatric technician who allegedly held Cornell on the ground;

10.  Guzman, the nurse responsible for Cornell's care at Parkland Hospital;

11.  Molinaro, the nurse who failed to monitor the seclusion room;

12.  Quinn, the medical director of Parkland Hospital's psychiatric emergency room;

13.   Roberts, the third psychiatric technician who allegedly held Cornell on the floor;

14.   Schierding, the nursing director of Parkland Hospital's psychiatric emergency room; and

15.   Shannon, then Parkland's executive vice president and chief medical officer.

Pena asserts different claims against different defendants. First, she asserts that all Defendants except UTSW violated 42 U.S.C. § 1983 by (1) denying Cornell medical care in violation of the Fourteenth Amendment's due process clause; and (2) subjecting Cornell to excessive force in violation of the Fourth and Fourteenth Amendments; and (3) maintaining customs, policies, and practices allowing such violations.[6] Second, she contends that Parkland and UTSW are liable for negligence based on their employees' treatment of Cornell. Finally, she requests exemplary damages against the "Individual Defendants" (all defendants except Parkland and UTSW).[7]

---

[6]Based on the amended complaint and the parties' briefing, the Court concludes that Pena is asserting only these claims. To the extent she asserts others, the Court finds that she has not pled enough facts to plead such claims plausibly. The Court therefore dismisses any such claims.

[7]The amended complaint appears not to seek exemplary damages against Parkland or UTSW. To the extent Pena does seek such damages against these defendants, the Court dismisses those portions of the amended complaint. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[A] municipality is immune from punitive damages under 42 U.S.C. § 1983."); TEX. CIV. PRAC. & REM. CODE § 101.024 (disallowing exemplary damages against governmental entities in cases brought under Texas Tort Claims Act).

The Court previously granted UTSW's motion to dismiss Pena's original complaint. *See* Order, Sept. 4, 2012 [31]. Pena thereafter filed her amended complaint, which Defendants now move to dismiss.

### C. The Various Groups of Defendants

Pena asserts a number of different claims against different Defendants. To better analyze these claims, the Court divides the Individual Defendants into different groups based on Defendants' relationships to Cornell and one another.

**1. The Hands-on Defendants. –** These Defendants were responsible for Cornell's treatment at Parkland on the night he died. This group comprises Achebe, Dr. Brown, Chambers, Givens, Guzman, Molinaro, and Roberts. The Parkland-employed Hands-on Defendants are Chambers, Cornell's attending physician; Guzman and Molinaro, nurses who assisted with Cornell's treatment; and Achebe, Givens, and Roberts, the three psychiatric technicians who allegedly held Cornell on the ground in the seclusion room. The only UTSW-employed Hands-on Employee is Dr. Brown, who also treated Cornell.

**2. The Supervisory Defendants. –** These Individual Defendants did not treat Cornell directly, but they are part of this suit because of their supervisory roles at Parkland and UTSW. The Supervisory Defendants are Anderson, Nurse Brown, Fitz, Quinn, Schierding and Shannon. During the events giving rise to this action, Anderson, Nurse Brown, Schierding, and Shannon worked for Parkland. Fitz and Quinn worked for UTSW.

## II. STANDARD OF REVIEW FOR
## MOTIONS TO DISMISS

When faced with a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).[8]  A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012).  But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).  A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (internal citations omitted).

---

[8]Parkland, Shannon, and Anderson have also filed Rule 12(c) motions for judgment on the pleadings.  The Court questions whether these motions are properly filed given that these defendants have not answered Pena's amended complaint.  *See* FED. R. CIV. P. 12(c) (noting that party may move for judgment on pleadings "[a]fter the pleadings are closed").  Pena, however, has not objected to the motions' timeliness.  In any event, the Court applies the same standard to motions under Rule 12(b)(6) and Rule 12(c).  *See In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 209–10 (5th Cir. 2010).  Because these defendants' two sorts of motions advance the same' arguments, the Court decides them in the same way.

### III. THE PARTIES' ARGUMENTS CONCERNING
### QUALIFIED IMMUNITY ARE PREMATURE

Many of the Individual Defendants' motions assert that the Court should dismiss Pena's section 1983 claims because the movants are entitled to qualified immunity. A governmental employee sued under section 1983 may assert the affirmative defense of qualified immunity. *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992). Qualified immunity shields government officials performing discretionary functions from liability for civil damages so long as their complained-of conduct did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

A defendant asserting qualified immunity must affirmatively *plead* that defense. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Despite this requirement, some courts have allowed a defendant to raise the defense in a motion to dismiss rather than a pleading. *E.g.*, *Jenkins v. Medford*, 119 F.3d 1156, 1159 (4th Cir. 1997). In the Court's view, however, a defendant in the Fifth Circuit must assert qualified immunity in an answer, not a motion. The Fifth Circuit has held that a plaintiff need not "anticipate the [qualified immunity] defense in his complaint at the risk of dismissal under Rule 12." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004) (quoting *Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995)) (alteration in original). Rather, the complaint need only meet the requirements of Rule 8. *Schultea*, 47 F.3d at 1433. The Federal Rules of Civil Procedure provide further support for the conclusion that assertion of qualified immunity is proper only in a pleading. If a

defendant elects to plead qualified immunity, a court may grant the plaintiff an opportunity to file a reply pleading under Rule 7(a).  *Id.* at 1431–33.  Rule 7(a), in turn, permits a court to allow a reply only to an answer – not a motion.  FED. R. CIV. P. 7(a)(7).  A defendant, then, must assert the defense in an answer.  Other courts in this District have reached similar conclusions.  *McKay v. Dallas Indep. Sch. Dist.*, No. 3:06-CV-2325-L, 2007 WL 2668007, at *9 (N.D. Tex. Sept. 6, 2007); *Johnson v. Anderson*, No. 4:03-CV-1355-Y, 2004 WL 1908212, at *1 & n.1 (N.D. Tex. Aug. 25, 2004); *see also Washington v. La. Dep't of Pub. Safety & Corr.*, Civ. A. No. 04-2314, 2004 WL 2984294, at *1 (E.D. La. Dec. 6, 2004).

In this case, Defendants have not filed answers, so they have not properly pled qualified immunity.  Correspondingly, Pena has not been afforded the opportunity to reply under Rule 7(a).  Dismissing the complaint based on qualified immunity defenses would therefore be premature.  The Court accordingly denies, without prejudice to refiling at the proper time, the portions of Defendants' motions seeking dismissal of Pena's section 1983 claims for failure to overcome qualified immunity.  *See Giardina v. Lawrence*, 354 F. App'x 914, 915 (5th Cir. 2009) (unpub.) (affirming district court's denial of motion for judgment on pleadings even though "the complaint did not include specific allegations that addressed the likely qualified immunity defense").

### IV.  PENA STATES SECTION 1983 CLAIMS FOR FAILURE TO PROVIDE MEDICAL CARE, EXCESSIVE FORCE, AND FAILURE TO SUPERVISE AND TRAIN

Pena asserts at least one section 1983 claim against each Defendant except UTSW. "To state a claim under 42 U.S.C. § 1983, 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged

ORDER – PAGE 10

deprivation was committed by a person acting under color of state law.'" *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008)). There is no dispute in this case that the Defendants accused of violating section 1983 were acting under color of state law. These Defendants are either (1) employees of Parkland or UTSW, which are state entities, or (2) Parkland itself. The parties dispute, however, whether Pena has adequately alleged violations of the Constitution or federal law. The Court concludes that she has.

### A. Pena States a Section 1983 Claim for Failure to Provide Medical Care Against the Hands-on Defendants

Generally, "the Due Process Clause does not require the State to provide its citizens with particular protective services, [and] it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196–97 (1989). In some cases, however, "the Constitution may impose on the state a special duty of care owed to certain restricted classes of persons." *Walton v. Alexander*, 44 F.3d 1297, 1302 (5th Cir. 1995). As the Supreme Court has explained,

> when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs – *e.g.*, food, clothing, shelter, medical care, and reasonable safety – it transgresses the substantive limits on state action set by the . . . Due Process Clause.

*DeShaney*, 489 U.S. at 200; *see also Walton*, 44 F.3d at 1302 ("[A] special duty of care owed to certain restricted classes of persons . . . generally arises when the state deprives a citizen of his liberty so that he is unable to care for himself.") (citing cases). The Fifth Circuit has

recognized only three circumstances giving rise to a special relationship: (1) incarceration, (2) involuntary institutionalization, and (3) placement of children in foster care. *Doe ex rel. Magee*, 675 F.3d at 856.[9]  The Circuit has also clarified that "the state creates a 'special relationship' with a person only when the person is involuntarily taken into state custody and held against his will through the affirmative power of the state." *Walton*, 44 F.3d at 1304. If Pena successfully pleads that Cornell had a right to medical care, she must also assert that Defendants violated that right.  To state a claim for violation of Cornell's substantive due process right of medical care, Pena must allege that a state employee "acted with subjective knowledge of a substantial risk of serious medical harm, followed by a response of deliberate indifference." *See Hill v. Carroll Cnty., Miss.*, 587 F.3d 230, 238 (5th Cir. 2009) (applying standard in case of arrestee).

### 1. Pena Has Sufficiently Pled a Special Relationship Giving Rise to a Right to Medical Care. –

Based on the facts as pled, the Court concludes that the Hands-on Defendants' restraint of Cornell gave rise as a special relationship granting Cornell a constitutional right to medical care under *DeShaney*.[10]  Based on the facts in the amended

---

[9]Givens and Achebe assert that Pena must show that Defendants' actions "shock the conscience" before she can state a Fourteenth Amendment claim.  Givens and Achebe's Br. Supp. Mot. Dismiss [52] 7–11.  But, as explained in the accompanying text, a plaintiff may state a section 1983 claim for violation of a Fourteenth Amendment right in some circumstances if she can prove a special relationship existed.  The parties have pointed the Court to no Fifth Circuit case law suggesting that a defendant's actions must shock the conscience if a special relationship exists, and the Court is aware of none.

[10]As some Defendants note, the Fifth Circuit has written that "[t]he special relationship doctrine is properly invoked in cases involving harms inflicted by third parties, and it is not applicable when it is the conduct of a state actor that has allegedly infringed a

complaint, state employees at Parkland Hospital sedated Cornell and locked him in a room.

Moreover, they refused to treat the heart condition that caused him to run to the fire station

in the first place.  Am. Compl. ¶ 32.  The complaint asserts that the employees, by their

affirmative actions, left Cornell in a condition – sedated and locked in a room – in which he

was not able to care for himself.  And, as the Supreme Court has observed, "it is the State's

affirmative act of restraining [an] individual's freedom to act on his own behalf  – through

incarceration, institutionalization, or other similar restraint of personal liberty – which is the

'deprivation of liberty' triggering the protections of the Due Process Clause."  *DeShaney*,

489 U.S. at 200.  The Court finds that the state employees' treatment of Cornell, as pled,

---

person's constitutional rights."  *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 529 (5th Cir.
1994).  These Defendants interpret this passage to mean that a court cannot use the *DeShaney*
"special relationship" test in *any* case in which a state actor is alleged to have infringed a
constitutional right.  The Court believes this conclusion to be incorrect.  The Fifth Circuit's
statement must be read in context.  *Leffall* is a case about a school district's alleged failure
to protect a student from harm.  When it made the statement quoted above, the Court was
explaining why *DeShaney* was inapplicable to a prior Fifth Circuit case, *Doe v. Taylor
Independent School District*, in which public school employees had allegedly raped the
plaintiff.  15 F.3d 443 (1994).  The Court noted that *DeShaney* was inapplicable to *Doe*
because in *Doe* a state employee directly caused the alleged constitutional deprivation.
*Leffall*, 28 F.3d at 528–29.  As the Court observed, "*Doe* concerned only the proper scope
of school officials' constitutional duties when one of their subordinates violates a student's
rights."  *Id.* at 529.
      *DeShaney* provides that a special relationship requires a state to provide an individual
with at least five "basic human needs – . . . food, clothing, shelter, medical care, and
reasonable safety."  489 U.S. at 200.  *Leffall* is a "reasonable safety" case, and the Court
declines to apply the sentence quoted above as broadly as Defendants ask it to.  If it did so,
a state could not be held responsible under *DeShaney* for, say, denying food to a pretrial
detainee.  This, the Court concludes, is not the intended effect of the single sentence from
*Leffall*.

ORDER – PAGE 13

constituted a restraint of Cornell's personal liberty sufficient to trigger the rights contemplated in *DeShaney*, including the right to medical care.

Some courts in this District have found that hospitals did not create special relationships with their patients, but those cases are distinguishable from this one. Several Defendants rely heavily on *Crofts v. Dallas County Hospital District*, the facts of which are similar to those in this case. No. 3:96-CV-2593-D, 1998 WL 75899 (N.D. Tex. Feb. 17, 1998), *aff'd*, 192 F.3d 125 (5th Cir. 1999). *Crofts*, however, is not directly on point. In that case, police officers brought Crofts, who had been severely beaten and who was disoriented and suffering from memory loss, to Parkland Hospital. *Id.* at *1. Crofts's family members told hospital employees that Crofts had a history of psychiatric problems. *Id.* Parkland employees placed him in a second-floor room with an unsecured window, and a nurse instructed a patient care technician to sit in the hall outside the room. *Id.* While the technician was outside the door to Crofts's room, Crofts jumped out the window and ultimately died of medical problems related to his injuries. *Id.* The court granted summary judgment to Parkland and its codefendants for two reasons. First, it noted that "[n]othing in the record reflects that [Crofts] would not have been free to leave on his request or at the request of someone legally authorized to make such a request for him." *Id.* at *3. Second, it observed that Crofts was a voluntary patient and that "a special relationship 'does not arise solely because the state exercises custodial control over an individual when a person *voluntarily resides* in a state facility under its custodial rules.'" *Id.* at *4 (quoting *Walton*, 44 F.3d at 1305) (emphasis in *Walton*).

ORDER – PAGE 14

This case is distinguishable from *Crofts* on both grounds. As to the first, the facts as alleged in the amended complaint suggest that, unlike Crofts, Cornell could not have left the hospital. Cornell was drugged and left on the floor of a locked seclusion room and, in that state, he simply could not have departed. Second, it is not clear from the amended complaint that Cornell was a voluntary Parkland patient. Pena pleads that Cornell complained of his chest pain to the Dallas Fire Department, but there are no facts alleged that indicate he was a voluntary *Parkland* patient. Indeed, the fact that medical personnel needed to physically and chemically restrain him suggests the opposite. The facts as pled in this case, therefore, distinguish it from *Crofts*.

They also distinguish it from others in this District finding no right to medical care. In *Wicks v. Parkland Hospital*, for instance, the court found that the plaintiff had no right to medical care when Parkland employees allegedly left him in bed after surgery without treating his serious pain. No. 3:09-CV-0580-B, 2009 WL 3363764, at *1 (N.D. Tex. Oct. 15, 2009). The plaintiff in *Kinzie v. Dallas County Hospital District* received HIV-infected blood during heart surgery at Parkland Hospital. 239 F. Supp. 2d 618, 622 (N.D. Tex. 2003), *aff'd*, 106 F. App'x 192 (5th Cir. 2003). Kinzie alleged that Parkland employees, though they knew Kinzie was HIV-positive at some point after the surgery, did not inform Kinzie of that fact or, consequently, provide him any treatment. *Id.* The courts in both cases found no special relationship and, therefore, no right to medical care. *Wicks*, 2009 WL 3363764, at *2; *Kinzie*, 239 2d F. Supp. 2d. at 632, 635. These plaintiffs, however, did not allege that state employees affirmatively restrained them. *See also Reynolds v. Parkland Mem'l Hosp.*

ORDER – PAGE 15

*& Doctors*, 3:12-CV-4571-N-BN, 2012 WL 7153849 (N.D. Tex. Dec. 28, 2012), *report and recommendation adopted*, No. 3:12-CV-4571-N, 2013 WL 607152 (N.D. Tex. Feb. 19, 2013) (finding no right to medical care and dismissing complaint alleging deficient care but not alleging restraint or confinement by state).  Here, however, Cornell alleges just that.  This critical factor leads the Court to conclude that this case differs from the others addressed in this District.  The Court accordingly finds that Cornell had a constitutional right to medical care for his heart ailment.

   **2.  *Pena Has Pled That Cornell Was Denied Medical Care.*** – The amended complaint unquestionably asserts that Cornell was not treated for his heart condition at Parkland Hospital on the night he died.  Am. Compl. ¶ 27.   The parties dispute, however, whether Pena has adequately pled that the Hand-on Defendants satisfied the "deliberate indifference" standard.  To do so, Pena must plead that Defendants "acted with deliberate indifference to [Cornell's] serious medical needs, meaning that [Defendants were] subjectively aware of a substantial risk of serious harm and failed to take reasonable measures to abate that risk." *See Lacy v. Shaw*, 357 F. App'x 607, 609 (5th Cir. 2009) (per curiam) (unpub.) (citing *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 647–48 (5th Cir. 1996)).  A serious medical need is "one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required."  *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006).  Negligence alone does not constitute deliberate indifference.  *Id.*  Rather, Pena must plead that Defendants engaged in some "conduct that would clearly evince a wanton disregard for any serious medical needs,"

including refusing to treat Cornell, ignoring complaints of a serious medical need, or intentionally treating him incorrectly. *See Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

According to the amended complaint, Cornell's intake form indicates that "at least" Guzman and Chambers knew about the cardiac problem that contributed to Cornell's death. Am. Compl. ¶ 27. Moreover, as to the other Hands-on Defendants, the amended complaint alleges that "the health care providers were on notice of [Cornell's] medical history" because he had been treated at Parkland previously for heart troubles. *Id.* ¶ 27. According to the amended complaint, then, Guzman and Chambers certainly had subjective notice of Cornell's condition. For the purpose of this motion, the Court also accepts Pena's allegation that the remaining hands-on defendants were on notice of the issue as sufficient to plead that they had subjective knowledge. Moreover, the chest pains Cornell complained of qualify as a "serious medical need" because, the Court concludes, a lay person would have recognized that care was required. *See Gobert*, 463 F.3d at 345 n.12. And no one disputes that the complaint alleges that hospital personnel declined to treat Cornell for his heart problems. This sort of refusal to treat a patient is the type of the "wanton disregard for . . . serious medical needs" that, if true, rises to the level of deliberate indifference. *See Domino*, 239 F.3d at 756.

Pena, then, has sufficiently alleged that the Hands-on Defendants deprived Cornell of his constitutional right to medical care. The Court therefore declines to dismiss this claim as to these defendants. To the extent Pena asserts the claim against the remaining Defendants, however, she has not alleged any facts suggesting they are directly liable. The

ORDER – PAGE 17

Court therefore dismisses the denial of medical care claim against all Defendants save the Hands-on Defendants.

### B.  Pena's Section 1983 Claims for Use of Excessive Force Against Achebe, Givens, and Roberts

*1.  The Pleading States the Elements of a 1983 Violation.* – Pena next alleges that the Hands-on Defendants violated section 1983 by depriving Cornell of his right to be free from the use of excessive force.  To state a claim based on violation of this right, Pena must allege (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force that was objectively unreasonable.  *See Bush v. Strain*, 513 F.3d 492, 500–01 (5th Cir. 2008).[11]  "The objective reasonableness of the force, in turn, depends on the facts and circumstances of the particular case, such that the need for force determines how much force is constitutionally permissible."  *Id.* at 501.

There is no question that, as to the first element, Pena has pled an injury: Cornell's death.  As to the second, the parties dispute whether that injury resulted "directly and only" from the allegedly excessive force, *i.e.*, Achebe, Givens, and Roberts's actions in physically restraining Cornell in the seclusion room.  The Fifth Circuit has clarified that this language "only . . . prohibit[s] compensation for injuries caused by the use of reasonable force."

---

[11]Some Defendants argue that the Fourteenth, not the Fourth, Amendment governs this claim.  It is not clear from the amended complaint which amendment is the basis for Pena's claim, but the standard appears to be the same under either one.  *See Petta v. Rivera*, 143 F.3d 895, 911 (5th Cir. 1998) ("[W]e see no principled reason for drawing an analytical distinction between the Petta children's due process claim and an arrestee's Fourth Amendment claim, given the substantially similar concerns implicated by the two claims."); *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993).

*Gutierrez v. City of San Antonio*, 139 F.3d 441, 450, n.8 (5th Cir. 1998). The language does not mean that the allegedly excessive force cannot combine with another factor to cause the plaintiff's injury. *Id.*; *Dunn v. Denk*, 79 F.3d 401, 403 (5th Cir. 1996) (en banc) (holding that second element of excessive force claim does "not speak to the recovery for injuries for which a person is uniquely susceptible beyond insisting that compensation be for an injury caused by the excessive force and not a reasonable force"). Here, Pena pleads that the excessive force combined with Cornell's preexisting heart condition and the overuse of medication to cause his death. Am. Compl. ¶ 31. This is sufficient to meet the requirements of the second element.

Pena also satisfies the third element. The amended complaint accuses Achebe, Givens, and Roberts of "holding [Cornell] down in the prone position, using improper techniques and pressing his face to the floor" on two separate occasions. *Id.* ¶ 30. The second occasion allegedly involved the unconstitutional use of force for over fifteen minutes. *Id.* The pleading also states that Cornell had been "agitated" prior to the restraint. *Id.* ¶ 28. Based on the circumstances of this case as pled, the Court concludes that the amended complaint properly alleges that the force used was objectively unreasonable: chemical sedation and physical restraint are not an objectively reasonable response to mere agitation. Pena has therefore properly pled the elements of a section 1983 claim for use of excessive force against Achebe, Givens, and Roberts.

In short, Pena's excessive force claim survives as to Achebe, Givens, and Roberts. To the extent Pena asserts a claim for use of excessive force against the other Defendants,

ORDER – PAGE 19

the Court concludes that she has not adequately pled a use of force that was objectively unreasonable. She has therefore not stated an excessive-force claim under section 1983 as to those Defendants.

      *2.   The Amended Complaint Does Not Impermissibly Group the Defendants Together.* – Roberts asserts that Pena's amended complaint "uses generalized pleading, with generalized labels and conclusions."[12] Roberts's Br. Supp. Mot. Dismiss [54] 6. Alleging that three psychiatric technicians held Cornell on the ground and otherwise acted in concert in the manner described in the amended complaint, however, does not impermissibly group Achebe, Givens, and Roberts together. Each is on notice that he is accused of holding Cornell to the ground and thereby allegedly violating Cornell's constitutional rights. This is sufficiently clear for the purposes of the complaint.

### C. Pena States a Claim Against the Supervisory Defendants Based on Their Customs or Policies

      Pena also adequately alleges that the Supervisory Defendants are liable under section 1983 for allowing customs, policies, or practices that permitted the violations discussed above to occur.[13] These employees – Anderson, Nurse Brown, Fitz, Quinn, Schierding, and

---

[12]In a similar vein, Achebe and Givens argue that the amended complaint provides "no context" for Pena's claim and is impermissibly vague. Achebe and Givens's Br. Supp. Mot. Dismiss [52] 13–14. For the reasons set out in the accompanying section above, the Court concludes otherwise.

[13]The Supreme Court wrote in *Iqbal* that "the term 'supervisory liability' is a misnomer" because "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." 556 U.S. at 677. Some courts have questioned the continuing viability of the supervisory liability as theory of liability supporting a section 1983 claim after *Iqbal*. *E.g.*, *Maldonado v. Fontanes*, 568 F.3d 263, 275, n.7 (1st Cir. 2009);

Shannon[14] – had no role in treating Cornell; rather, Pena alleges that they, as supervisors, were responsible for practices that allowed Cornell to die.

A supervisor cannot be held liable under a theory of vicarious liability for constitutional violations committed by subordinates. *Bustos v. Martini Club Inc*., 599 F.3d 458, 468 (5th Cir. 2010). A supervisor can, however, be liable for such violations committed if they result directly from a custom or policy. *See Conner v. Travis Cnty.*, 209 F.3d 794, 796 (5th Cir. 2000) (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Breaux v. City of Garland*, 205 F.3d 150, 161 (5th Cir. 2000)). Pena alleges that the Supervisory Defendants are liable for failure to train or supervise their subordinates. To state such a claim, Pena must plead that (1) the Supervisory Defendants either failed to train or supervise the subordinates, (2) a causal link exists between the failure to train or supervise and the underlying violations of Cornell's rights, and (3) the failure to train or supervise amounts to deliberate indifference. *See Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009). "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th

_____

*Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). The Fifth Circuit, however, has not held that *Iqbal* changes prior case law regarding supervisory liability in this Circuit, and the Court declines to do so here. The Court concludes that a supervisor's act of allowing customs, policies, or practices to exist that permit constitutional violations has qualifies as misconduct for which a government official may be liable, as contemplated in *Iqbal*.

[14]To the extent Pena asserts claims based on custom, policy, or practice against other Individual Defendants, the claims fail because she does not adequately allege that any other defendants had any supervisory role.

ORDER – PAGE 21

Cir. 1998)). "To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Id.* (quoting *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003)) (internal quotation marks omitted).

Pena has adequately pled a section 1983 violation based on failure to train or supervise. She asserts that both the Parkland and UTSW Supervisory Defendants failed to train or supervise their subordinates and that the alleged failure to train or supervise led to the two underlying section 1983 violations. Am. Compl. ¶¶46, 52. The parties dispute whether she has adequately pled the third element, deliberate indifference. Deliberate indifference is a "stringent standard of fault." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 410 (1997). The Court nonetheless concludes that the facts pled in the amended complaint are sufficient to make a plausible case that the Supervisory Defendants were deliberately indifferent. She alleges that they "had actual and constructive notice, based on prior incidents and the customs of Parkland, that psychiatric patients were at a profound risk of harm or death at the hands of improperly trained and unqualified subordinates in the psychiatric emergency room." Am. Compl. ¶¶ 47, 53. Moreover, she asserts that Cornell's death was "part of a well-established pattern at Parkland" Hospital that included the death of another patient, Mike Herrera, in 2008. *Id.* ¶ 4. She maintains that "Parkland and UTSW were aware of gross deficiencies" at Parkland Hospital since at least the time of Herrera's death. *Id.* And she alleges that "the Center[s] for Medicare and Medicaid Services investigated [Parkland Hospital] and reported to Parkland that 'the

ORDER – PAGE 22

deficiencies are so serious that they constitute an immediate threat to the health and safety of any individual who comes to your hospital with an emergency medical condition.'" *Id.* The Court finds these factual allegations sufficient to satisfy even the stringent requirements of deliberate indifference. Pena, therefore, has stated a claim for a section 1983 violation against the Supervisory Defendants for failure to train or supervise their subordinates.

### D.  Pena States a Claim Against Parkland Under Section 1983

**1.  *Pena's Claim Against Parkland Mirrors Her Claim Against the Supervisory Defendants.* –** Pena's final section 1983 claim is against Parkland itself. Parkland, a governmental entity, cannot be vicariously liable for the acts of its employees. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). For Parkland to be liable, three requirements must be met. First, Parkland "must have 'an official policy, practice, or custom' which could subject it to § 1983 liability." *Lawson v. Dallas Cnty.*, 286 F.3d 257, 263 (5th Cir. 2002) (quoting *Monell*, 436 U.S. at 690–94). An official policy need not be written; rather, it may be a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Bishop v. Arcuri*, 674 F.3d 456, 467 (5th Cir. 2012) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc)). Second, the policy or practice must be linked to the underlying constitutional violations. *Lawson*, 286 F.3d at 263. Third, Parkland's policy or practice "must reflect [its] deliberate indifference to that injury." *Id.*

ORDER – PAGE 23

Pena's claim against Parkland echoes her claim against the Supervisory Defendants: failure to train or supervise. A municipality may be held liable for such failures if "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989). The analysis of failure to train or supervise claims against supervisors and municipalities is similar. *See Goodman v. Harris Cnty.*, 571 F.3d 388, 396 (5th Cir. 2009). Pena has sufficiently pled a section 1983 claim for failure to train, for effectively the same reasons she has pled an analogous claim against the Supervisory Defendants. First, she asserts that Parkland had a custom under which unsupervised and untrained employees were allowed to treat and use excessive force[15] to restrain Cornell. Am. Compl. ¶ 40. Second, she maintains that this policy resulted in the violation of Cornell's rights. *Id.* ¶ 41. Finally, she provides sufficient facts to suggest that Parkland was deliberately indifferent. The same facts that suffice to allege the Supervisory Defendants' deliberate indifference suffice to do allege deliberate indifference by Parkland, too. *Id.* ¶¶ 4, 41; *see supra* section IV.C. In short, Pena has pled

---

[15]Parkland asserts that Achebe, Givens, and Roberts's alleged use of excessive force was outside the scope of their employment and therefore constituted a "private violence" for which Parkland is not liable. Parkland's Br. Supp. Mot. Dismiss 24. Based on the facts as pled, however, the Court cannot conclude that these employees in fact acted outside the scope of their employment.

sufficient facts to assert a plausible claim against Parkland for violation of section 1983 based on failure to train or supervise its employees.[16]

### 2. *Pena Need Not Allege That State Laws Are Insufficient.* – Parkland contends that

Pena must plead that Texas laws applicable to her situation are inadequate in order to bring a section 1983 claim. As Parkland correctly notes, the Supreme Court wrote in *Monroe v. Pape* that one of the underlying purposes of section 1983 "was to provide a federal remedy where the state remedy, though adequate in theory, was not available in practice." 365 U.S. 167, 174 (1961), *overruled in part by Monell*, 436 U.S. 658. The *Monroe* language Parkland cites, though, refers only to a background rationale for section 1983 – not a pleading requirement. In fact, the Court also wrote in *Monroe* that "[t]he federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." *Id.* at 183. More recently, the Court has further observed that

> overlapping state remedies are generally irrelevant to the question of the existence of a cause of action under § 1983. A plaintiff, for example, may bring a § 1983 action for an unlawful search and seizure despite the fact that the search and seizure violated the State's Constitution or statutes, and despite the fact that there are common-law remedies for trespass and conversion.

---

[16]It is true that Pena has not pled a large number of specific facts supporting her allegations against and conclusions as to Parkland. Even under *Twombly* and *Iqbal*, however, the Court concludes that the pleading is sufficient. *See Thomas v. City of Galveston, Tex.*, 800 F. Supp. 2d 826, 842–43 (S.D. Tex. 2011) ("In the context of municipal liability, as opposed to individual officer liability, it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery. Accordingly, only minimal factual allegations should be required at the motion to dismiss stage.").

*Zinermon v. Burch*, 494 U.S. 113, 124–25 (1990). It went on to note that "[a] plaintiff, under *Monroe v. Pape*, may invoke § 1983 regardless of any state-tort remedy that might be available to compensate him for the deprivation of" either a right secured by the Bill of Rights or substantive due process. *Id.* at 125. The Court, therefore, declines to require Pena to plead in her amended complaint that state remedies are inadequate.

### E. The Court Dismisses Pena's Official Capacity Claims

Pena asserts her claims against the Parkland-employed Individual Defendants in their official and individual capacities. Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). When, as here, a plaintiff has sued a government official in his or her individual and official capacities and has also sued the official's governmental employer, "[t]he official-capacity claims and the claims against the governmental entity essentially merge." *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 485 (5th Cir. 2000). Pena's official capacity claims are, therefore, redundant. *See Stephens v. Dallas Cnty., Tex.*, No. 3:05-CV-1009-K, 2007 WL 34827, at *4 (N.D. Tex. Jan. 4, 2007); *Clark v. La Marque I.S.D.*, 184 F. Supp. 2d 606, 612 (S.D. Tex. 2002). The Court therefore dismisses these claims.

### F. Conclusion as to Pena's Section 1983 Claims

The Court concludes that Pena has stated claims under section 1983 against (1) the Hands-on Defendants for failure to provide Cornell with medical care; (2) Achebe, Givens,

and Roberts for use of excessive force; (3) the Supervisory Defendants for failure to train or supervise their subordinates; and (4) Parkland for its failure to train or supervise its employees. To the extent Pena asserts other section 1983 claims, the Court dismisses them. The Court also dismisses Pena's claims against the Individual Defendants in their official capacities.

## V. PENA'S NEGLIGENCE CLAIMS ARE VIABLE UNDER THE TTCA

Pena asserts negligence claims against only UTSW and Parkland. Because the Texas Tort Claims Act ("TTCA") waives sovereign immunity for these claims, the Court declines to dismiss them.[17]

### A. Pena Must Show a Waiver of Sovereign Immunity

Under the doctrine of sovereign immunity, a governmental unit cannot incur tort liability unless the legislature has waived that immunity. *See Dallas Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex. 1998) (citing *Harris Cnty. v. Dillard*, 883 S.W.2d 166, 168 (Tex. 1994)). The Texas Tort Claims Act ("TTCA") waives

---

[17]The amended complaint appears to assert no negligence claims against any of the Individual Defendants. To the extent it does, however, the Court dismisses them under Texas Civil Practice and Remedies Code § 101.106. This section allows a plaintiff to sue either a governmental unit or its employees, but not both. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 657 (Tex. 2008) (noting that section 101.106's "apparent purpose was to force a plaintiff to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable"). The Court notes that Pena is not prohibited from bringing, as she does in the amended complaint, negligence claims against governmental entities and section 1983 claims against both governmental units and individual employees of those units.

sovereign immunity for some tort claims, though it "allow[s] suits to be brought against governmental units only in certain, narrowly defined circumstances." *Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001). Specifically, the TTCA provides as follows:

> A governmental unit in the state is liable for:
> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
> > (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
> > (B) the employee would be personally liable to the claimant according to Texas law; and
> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Tex. Civ. Prac. & Rem. Code § 101.021. "Section 101.021 has been interpreted to waive sovereign immunity in three general areas: 'use of publicly owned automobiles, premises defects, and injuries arising out of conditions or use of property.'" *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 611 (Tex. 2000) (quoting *Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 298 (Tex. 1976)).

When a plaintiff's claims involve the use of property under TTCA, the governmental entity itself must be the user of that property. *San Antonio State Hosp. v. Cowan*, 128 S.W.3d 244, 246 (Tex. 2004). "However, mere involvement of . . . property in an injury will not, in and of itself, waive liability." *Tex. Tech Univ. Health Sci. Ctr. v. Jackson*, 354 S.W.3d 879, 884 (Tex. App. – El Paso 2011, no pet.) (citing *Bossley*, 968 S.W.2d at 342–43).

ORDER – PAGE 28

The government's use of the property must have proximately caused the plaintiff's harm. *Bossley*, 968 S.W.2d at 343. In other words, "[t]o establish causation, the use of property must do more than just furnish the condition which makes the injury possible;" rather, the property must be "the instrumentality of the harm." *Jackson*, 354 S.W.3d at 884 (citing *Bossley*, 968 S.W.2d at 343; *Batson v. City of Port Isabel*, 49 S.W.3d 425, 429 n.4 (Tex. App. – Corpus Christi 2001, pet. denied)). Similarly, with regard to a claim based on defective real property, "the premises condition must actually be the instrumentality that causes the plaintiff's harm." *Hendrix v. Bexar Cnty. Hosp. Dist.*, 31 S.W.3d 661, 663 (Tex. App. – San Antonio 2000, pet. denied) (citing *San Antonio State Hosp. v. Koehler*, 981 S.W.2d 32, 37 (Tex. App. – San Antonio 1998, pet. denied); *Wimberly v. Sloan*, 963 S.W.2d 556, 558 (Tex. App. – Eastland 1998, no pet.)).

### B. The Hands-on Defendants' Use of Medication Creates a Waiver of Immunity

Pena points to two potential waivers of sovereign immunity. The first arises out of the Hands-on Defendants' use of the seclusion room, the second out of their use of the medication they administered to Cornell. The Court concludes that the use of the seclusion room did not waive sovereign immunity but that the use of the medication did.

*1. The Seclusion Room. –* Pena asserts that Parkland and UTSW waived sovereign immunity because (1) their use of the room and (2) the room's condition caused Cornell's injury. Both of these arguments fail.

ORDER – PAGE 29

First, as to the question of use, Pena has failed to establish a causal link between the use of the room and Cornell's injuries. The room provided only a condition that made Cornell's injury possible. It was not the instrumentality of the harm that befell him. *See Bossley*, 968 S.W.2d at 343 ("Property does not cause injury if it does no more than furnish the condition that makes the injury possible."). Texas courts have routinely found that, where injury occurs in a state-owned room, the mere fact that the room was used and was the site of the plaintiff's injury does not waive the defendant's sovereign immunity. *E.g.*, *Ordonez v. El Paso Cnty.*, 224 S.W.3d 240, 244 (Tex. App. – El Paso 2005, no pet.) ("Although a room may be part of the context and condition that made a personal injury possible, such a setting without more, cannot satisfy the requirement of proximate cause under the Act."); *Hendrix*, 31 S.W.3d at 663 (finding no waiver based on use of examination room where state employee assaulted patient in that room); *Scott v. Prairie View A & M Univ.*, 7 S.W.3d 717, 720 (Tex. App. – Houston [1st Dist.] 1999, pet. denied) (finding no waiver where sexual assault occurred in university-owned room). This case is indistinguishable as to this issue. The Parkland employees' use of the seclusion room, the Court concludes, does not waive Parkland's or UTSW's sovereign immunity.

Second, regarding the issue of the room's condition, Pena alleges that the room "was defective in that it was not properly monitored by a person constantly and did not have appropriate monitoring mechanisms and equipment in place." Am. Compl. ¶ 55(c). A governmental unit may waive immunity under the TTCA "when a state actor has provided property that lacks an integral safety component and the lack of this integral safety

component leads to the plaintiff's injuries." *Tex. Dep't of Criminal Justice v. Diller*, 127 S.W.3d 7, 12 (Tex. App. – Tyler 2002, pet. denied) (citing *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 585 (Tex. 1996)). In this case, however, Pena has not demonstrated that either constant in-person monitoring or monitoring equipment was an integral safety component. And Texas case law is not on Pena's side. One state appeals court found that a hospital did not waive its immunity where the plaintiff alleged that the hospital failed to monitor its security cameras. *Fryman v. Wilbarger Gen. Hosp.*, 207 S.W.3d 440, 441–42 (Tex. App. – Amarillo 2006, no pet.). Still others have rejected the contention that failure to properly monitor a room waives immunity. *E.g.*, *Bonham v. Tex. Dep't of Criminal Justice*, 101 S.W.3d 153, 160 (Tex. App. – Austin 2003, no pet.) (finding no waiver where prison restroom lacked surveillance equipment because (1) lack of equipment did not constitute "use," (2) equipment was not integral safety component, and (3) decision whether to use equipment "would be a discretionary governmental policy decision for which sovereign immunity is not waived").[18]

In short, neither the use nor the condition of the seclusion room constitutes a waiver of Parkland's or UTSW's sovereign immunity under the TTCA.

**2. *The Medication.* –** Pena's second argument is that the Hands-on Defendants who administered medication to Cornell "used" that medication, and the syringes used to administer it, within the meaning of the TTCA. Specifically, she asserts that Chambers, with

---

[18]Moreover, as to UTSW, Pena has not adequately alleged that UTSW had any control over the room's condition.

the aid of Roberts, Givens, and Achebe – all four of whom were Parkland employees – administered the first round of medication. Am. Compl. ¶ 55. Later, she alleges, Dr. Brown – a UTSW employee – administered another round of medication and similarly "used" the drugs and syringes. *Id.* ¶ 58(a). The Court concludes that this constitutes a waiver of sovereign immunity by Parkland and UTSW.

Use of medication may waive sovereign immunity under the TTCA so long as the medication caused the plaintiff's injury or death. *See, e.g.*, *Dallas Cnty. v. Alejo*, 243 S.W.3d 21, 27–28 (Tex. App. – Dallas 2007, no pet.). Here, Pena has sufficiently alleged that the two successive rounds of medication caused Cornell's death. Use of a syringe, too, may lead to waiver of immunity if, again, the syringe was the cause of the injury or death. *See Angleton Danbury Hosp. Dist. v. Chavana*, 120 S.W.3d 424, 428 (Tex. App. – Houston [14th Dist.] 2003, no pet.). In this case, however, there are no facts in the amended complaint suggesting that the *syringes* the medical personnel used caused Cornell's death. Rather, the combination of the two rounds of *medication* allegedly caused his death. It was, in other words, the medication in the syringe – not the syringe itself – that allegedly lead to Cornell's death.

Parkland's and UTSW's counterarguments are unavailing. Parkland correctly notes, first, that failure to administer the correct medication to a patient does not waive sovereign immunity. *E.g.*, *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 584 (Tex. 1996); *Alejo*, 243 S.W.3d at 28. Here, however, Pena asserts that Parkland medical personnel affirmatively administered medicine in a way that killed Cornell, not they failed to administer the correct

medicine.  This difference is critical.  Failure to administer the correct medication is not an immunity waiver because it amounts to a *non-use* of tangible personal property.  *E.g.*, *Kerrville*, 923 S.W.2d at 584; *Alejo*, 243 S.W.3d at 28.  Here, by contrast, Pena claims that the *use* of the medications caused Cornell's death.  Her amended complaint is sufficient to allege the use of tangible personal property and therefore to plead a sovereign immunity waiver.

Parkland also contends that "errors in medical judgment" do not waive immunity. Parkland's Br. Supp. Mot. Dismiss [57] 10.  But Parkland overstates the rule.  The Texas Supreme Court has indeed held that some such errors do not waive immunity.  For instance, in *Texas Department of Criminal Justice v. Miller*, a prison doctor misused medication in a way that masked an inmate's symptoms of meningitis, leading to failure to diagnose and ultimately to the inmate's death.  51 S.W.3d 583, 585 (Tex. 2001).  The Court found no waiver of immunity, but it observed in doing so that "neither the drugs nor the treatment afforded to [the inmate] hurt him or made him worse, in and of themselves." *Id.* at 588.  The rule in *Miller* is inapplicable to cases in which, as here, the plaintiff alleges that the administered drugs themselves caused the plaintiff's harm.[19]

---

[19]The Court also disagrees with Parkland's contention that "[w]hen improper use of medication is characterized as a use of tangible property, but there is no allegation that employees of a of a state health care facility gave the drugs contrary to the orders of the prescribing doctor, there is no waiver of the [TTCA]."  Parkland's Reply Br. [80] 8.  In *Somervell County Healthcare Authority v. Sanders*, the Waco Court of Appeals concluded that the improper administration of medicine contrary to the instructions of the prescribing doctor "is characterized as a use of tangible property." 169 S.W.3d 724, 728 (Tex. App. – Waco 2005, no pet.) (citing *Thomas v. Harris Cnty.*, 30 S.W.3d 51, 56 (Tex. App. – Houston [1st Dist.] 2000, no pet.)). But neither *Sanders* nor any other case of which the Court is aware

UTSW asks the Court to find no waiver because Parkland employees, not UTSW employee Dr. Brown, injected Cornell with the drugs Dr. Brown ordered administered. Moreover, it notes, the drugs were not dispensed from a UTSW pharmacy. Therefore, it concludes, no UTSW employee actually "used" the tangible personal property in question. It has pointed, however, to no binding case law standing for the proposition that a doctor who instructs a subordinate to inject a drug into a patient has not "used" that drug under the TTCA.[20] In fact, "'[u]se' means 'to put or bring into action or service; to employ for or apply to a given purpose.'" *Id.* at 588 (quoting *Texas Natural Res. & Conservation Comm'n v. White*, 46 S.W.3d 864, 869 (Tex. 2001)). UTSW asks the Court to parse the events leading to Cornell's death too finely. Dr. Brown, whether or not he personally injected Cornell with the medications, "brought them into service" by instructing Parkland medical personnel to administer them. If Dr. Brown had ordered a Parkland staff member to strike Cornell with a hammer, UTSW could not escape potential liability for Dr. Brown's action by claiming that only the staff member used the hammer – it would have been Dr. Brown who brought the

_____

stands for the proposition that only this type of improper administration qualifies as a "use" under the TTCA.

[20]It does point to *Texas Tech University Health Science Center v. Buford*, in which the Eastland Court of Appeals concluded that "Tech did not employ those persons who actually dispensed and administered the patches [causing the plaintiff's injury]; those persons worked for Ector County Hospital District, and Tech is not responsible for their actions." 334 S.W.3d 334, 338 (Tex. App. – Eastland 2010, no pet.). For the reasons discussed in the accompanying text above, the Court respectfully disagrees with this conclusion, which is not binding on the Court.

ORDER – PAGE 34

hammer into service by ordering it to be used.[21]  The Court therefore holds that Dr. Brown's alleged actions constitute a "use" of the medication administered to Cornell as contemplated by the TTCA.  That use effected a waiver of UTSW's sovereign immunity.

### C. Conclusion as to Sovereign Immunity

Pena has sufficiently pled that Parkland and UTSW waived sovereign immunity.  The Parkland and UTSW employees' administration of medication to Cornell as alleged in the amended complaint qualify as "uses" of tangible personal property under the TTCA.  Those uses, in turn, waived Parkland's and UTSW's sovereign immunity from suit for negligence.

### CONCLUSION

The Court concludes that Pena's amended complaint validly states section 1983 claims:

1.    against the Hands-on Defendants – Achebe, Dr. Brown, Chambers, Givens, Guzman, Molinaro, and Roberts – for violation of Cornell's right to medical care;

2.    against Achebe, Givens, and Roberts for use of excessive force;

3.    against the Supervisory Defendants – Anderson, Nurse Brown, Fitz, Quinn, Schierding, and Shannon – for failure to train or supervise their subordinates; and

---

[21]Under UTSW's reasoning, a governmental entity could seek to avoid liability for a negligence by arguing, on one hand, that a supervisor did not "use" the property because he merely ordered its use, and, on the other, that the staff who did use the property were "only following orders" and were not negligent.  But the TTCA cannot be sidestepped so easily.

ORDER – PAGE 35

      4.      against Parkland for failure to train or supervise its employees.

The Court also concludes that Pena has stated negligence claims under the TTCA against Parkland and UTSW.  The Court therefore grants in part and denies in part Defendants' motions in accordance with these conclusions.

      Signed June 26, 2013.

                                 David C. Godbey
                          United States District Judge